IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA    :
                            :
                            :
                            :
                            :
                            :
                            :    CRIMINAL ACTION NO.
                            :    1:18-cr-00507-LMM-AJB-3
v.                          :
                            :
                            :
LAURA ADAMS                 :
                            :
                            :
                            :
                            :

## ORDER

This case comes before the Court on the Magistrate Judge's Report and Recommendation [162] recommending that Defendant Laura Adams's Motion to Suppress Statements [105] be denied; Motion to Suppress Evidence Seized From 220 Oakwood Circle, Stockbridge, Georgia on January 10, 2019 [106] be denied; Motion to Bifurcate Count 12 and 21 U.S.C. § 841 Enhancement Evidence [107] be granted in part and denied in part as moot; Motion to Suppress Evidence From Cell Phone [108] and Amended Motion to Suppress Evidence Seized From Cell Phone [115] be granted in part as moot and denied in part; and Motion for Return of Property [109] be denied. After due consideration, the Court enters the following Order:

## I.   BACKGROUND[1]

On December 19, 2018, a Grand Jury returned an indictment charging Defendant with (i) possessing with intent to distribute heroin and at least 50 grams of methamphetamine, and (ii) conspiring to possess with intent to distribute heroin and at least 50 grams of methamphetamine. Dkt. No. [1]. The same day, a United States Magistrate Judge signed a warrant for Defendant's arrest. On January 10, 2019, law enforcement officers affiliated with the Drug Enforcement Administration ("DEA") traveled to Defendant's residence—220 Oakwood Circle, Stockbridge, Georgia—to execute the warrant.

Officer Kelly Bennett was the first to arrive at the residence. As he approached, he spotted Defendant outside the house and ordered her to come toward him. Defendant initially responded by moving toward the front door of the house. Officer Bennett repeated his command and approached Defendant. When Officer Bennett reached Defendant, he grabbed her hands, placed them behind her back, handcuffed her, and escorted her to his vehicle. Officer Bennett's firearm remained holstered during this sequence. He told Defendant that another officer would soon arrive to speak with her. Officer Bennett observed that Defendant was nervous and shaking at this point.

About a minute later, Officer Howard Spitzer and several members of the Henry County Sheriff's Office arrived, wearing plain clothes. None of those

---

[1] Unless otherwise indicated, this information is taken from the transcript of the evidentiary hearing held before the Magistrate Judge on January 28, 2020, after Defendant filed the instant motions. See Dkt. No. [132].

officers ran toward Defendant or drew their weapons as they approached. Officer Spitzer identified himself to Defendant, presented his DEA credentials, and read Defendant a <u>Miranda</u> warning from a card supplied to him by the DEA. Defendant verbalized understanding. She stated several times that she wanted to cooperate, but said she preferred to speak in a private setting. Officer Spitzer suggested Defendant's residence, and Defendant agreed. Officers then moved Defendant's cuffed hands from behind her back to the front of her body, and Officer Spitzer walked with Defendant inside the house. Officer Bennett asked if officers could conduct a protective sweep of the house for their safety, and Defendant agreed. Officers yelled the word "police" as they canvassed the house but did not draw their firearms.

During the sweep, officers encountered a woman and a bag of apparent methamphetamine atop the woman's purse. Officer Spitzer sat with Defendant as officers proceeded through the house. He noticed in plain view a small digital scale, a measuring cup, apparent methamphetamine residue on the scale and cup, and a television monitor displaying several security camera feeds. This indicated to Officer Spitzer the existence of a methamphetamine distribution operation.

As the officers conducted their protective sweep, Officer Spitzer questioned Defendant about methamphetamine transactions relevant to this case. He found most of Defendant's answers truthful but did not believe some of her statements. Officer Spitzer told Defendant that he was in contact with the Assistant United

States Attorney ("AUSA") in charge of prosecuting Defendant and that Defendant needed to be completely truthful. Shortly thereafter, and after Officer Bennett informed him of what had been found during the protective sweep, Officer Spitzer asked if law enforcement could search Defendant's residence for methamphetamine or other contraband. Defendant said yes. Officer Spitzer then handed Defendant a consent-to-search form to record her consent in writing. Defendant asked if she was required to sign the form. Officer Spitzer responded that she was not only free not to sign the form, but was entitled to completely refuse consent. He added that if Defendant did not consent, he would contact the AUSA, describe the contraband and other items that officers had found, and ask about applying for a search warrant. Defendant, sobbing, told Officer Spitzer he did not need to do that. Officer Spitzer again told Defendant she could decline to consent and asked her to make sure she read the form. Defendant examined the form and signed it. Officer Spitzer then told Defendant that she could revoke her consent at any time and that officers would halt their search if she did so. Officers then searched Defendant's residence while Officer Spitzer remained seated with Defendant.

The search turned up a safe that opened with one of the keys on Defendant's key ring. Inside the safe were three pistols, two small bags of methamphetamine, unused hypodermic needles, a scale, and scooping

implements coated in apparent methamphetamine residue. Defendant, sobbing, denied knowledge of the safe's contents.

Officer Spitzer subsequently asked Defendant if her cell phone contained evidence of methamphetamine transactions. Defendant responded that it probably did. Officer Spitzer asked if he could search the phone. Again, Defendant asked if Officer Spitzer needed a warrant to do so. Officer Spitzer replied that he did "not necessarily" need one, as Defendant could voluntarily consent to a search; if she did not, Officer Spitzer said, he might apply for a search warrant in the future. Defendant told Officer Spitzer he could search the phone and provided her passcode to unlock the phone. After looking through Defendant's messages, Officer Spitzer found evidence of one drug transaction unrelated to the charges in Defendant's indictment, but no evidence of the conspiracy he was investigating. He then seized the phone, and the Government later obtained a warrant to search its contents. See Dkt. No. [115-1]. The phone remains in the Government's possession.

On September 13, 2019, the Government filed a Superseding Indictment, Count 12 of which charged Defendant with a new offense: possessing a firearm as a convicted felon. Dkt. No. [93] at 9–10. In October 2019, Defendant filed the several motions that the Magistrate Judge addressed in his Report and Recommendation. At Defendant's request, the Magistrate Judge conducted an evidentiary hearing before ruling on Defendant's motions. Following that hearing, the Government and Defendant filed briefs in support of their respective

positions. See Dkt. Nos. [140], [142]. The Magistrate Judge issued his Report and Recommendation on March 17, 2021. Defendant has filed objections to several of the Magistrate Judge's findings and recommendations. Dkt. No. [165]. The Government has not responded to Defendant's objections, and the matter is now ripe for the Court's review.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's Report and Recommendation for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files objections, the district court must review *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id. As Defendant has filed objections to the Magistrate Judge's findings, the Court reviews the challenged findings and recommendations on a *de novo* basis.

## III.    DISCUSSION

Defendant objects to the Magistrate Judge's recommended dispositions of her (i) Motion to Suppress Statements, (ii) Motion to Suppress Evidence Seized From 220 Oakwood Circle, Stockbridge, Georgia on January 10, 2019, (iii) Motion to Suppress Evidence seized from her cell phone (as to Officer Spitzer's observations about the phone), and (iv) Motion for Return of Property.[2] The Court addresses each objection in turn.

---

[2] Defendant does not object to the Magistrate Judge's findings and recommendations as to her Motion to Suppress Evidence seized from her cell phone (as it relates to evidence the Government obtained via search warrant) and her Motion to Bifurcate. After careful review, the Court agrees with the

### A.    Motion to Suppress Statements

"Before a suspect's uncounseled incriminating statements made during custodial interrogation may be admitted, the prosecution must show 'that the suspect made a voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel.'" United States v. Lall, 607 F.3d 1277, 1282 (11th Cir. 2010) (quoting United States v. Beale, 921 F.2d 1412, 1434 (11th Cir. 1991)); see Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004) (stating that this showing must be made by a preponderance of the evidence). After the evidentiary hearing, the Magistrate Judge concluded that Defendant had voluntarily waived her right to remain silent under Miranda v. Arizona, 384 U.S. 436 (1966), and then spoke with Officer Spitzer voluntarily. Dkt. No. [162] at 36–39. The Magistrate Judge found that although Defendant was distraught at the time she was informed of her Miranda rights, Defendant's statements and conduct indicate that she understood the substance of those rights and the consequences of forfeiting them. Id. at 37. The Magistrate Judge identified neither evidence of physical coercion, nor any indication that "officers took advantage of or otherwise exploited [Defendant's] emotional state . . . ." Id. at 38. Thus, the Magistrate Judge held, the Government constitutionally obtained Defendant's Miranda waiver and subsequent statements.

---

Magistrate Judge's sound reasoning and adopts the Report and Recommendation on these points.

In her objections, Defendant emphasizes the number of officers present at her arrest, their physical size, the fact that she was handcuffed and in custody when she waived her <u>Miranda</u> rights, and her fragile emotional state at that time. Dkt. No. [165] at 2–4. She also points to Officer Spitzer's statement, after questioning began, that he would inform an AUSA if Defendant did not answer questions truthfully. <u>Id.</u> at 4. Considered together, Defendant argues, the circumstances of her arrest and interrogation demonstrate "that her will was overborne" and thus that she did not "voluntarily consent[]" to answer officers' questions. <u>Id.</u>

Taken together, these facts do not amount to coercion and do not render Defendant's <u>Miranda</u> waiver or her subsequent statements involuntary. Despite the presence of several agents at her arrest, and the fact that those agents were physically larger than Defendant, there is no evidence that any of those agents applied physical force to Defendant, or threatened her with force, during or after her arrest. When Officer Spitzer approached Defendant shortly after she had been handcuffed, Defendant remained restrained but neither Officer Spitzer nor any other officer unholstered a weapon. "Defendant's interrogation while [s]he was handcuffed and under arrest might have carried some inherent intimidation," but the fact that officers "neither maintained physical contact with the Defendant, nor drew their guns in a show of force" weighs strongly against a finding of coercion. <u>United States v. Manson</u>, No. 1:11-CR-13-AT-LTW-2, 2012 WL 2861595, at *2 & n.1 (N.D. Ga. July 11, 2012); <u>see also</u> <u>Shriner v. Wainwright</u>,

715 F.2d 1452, 1456 (11th Cir. 1983) ("The use of handcuffs does not establish coercion . . . ."); cf. United States v. Espinosa-Orlando, 704 F.2d 507, 512–13 (11th Cir. 1983) (defendant voluntarily consented to search while lying on the ground with a gun pointed at him); United States v. Garcia, 890 F.2d 355, 360–62 (11th Cir. 1989) (officers did not "employ[] any tactics that would augment the degree of coercion that is inherent in any arrest" when 14 agents were present and, before consenting to a search, defendant had been forced to the ground at gunpoint).

Defendant's conduct likewise indicates a voluntary Miranda waiver. Immediately after Officer Spitzer introduced himself, Defendant repeatedly stated that she wanted to cooperate. Dkt. No. [132] at 52–53. Officer Spitzer then read Defendant a Miranda warning. See United States v. Chung, No. 1:13-cr-379-TCB-AJB, 2016 WL 11432472, at *8 (N.D. Ga. Sept. 12, 2016) (finding no coercion when "the request to waive [the defendant's] rights came almost immediately after he was brought into the interview room"), adopted by 2016 WL 6440128 (N.D. Ga. Oct. 28, 2016). Though Defendant was understandably distraught by the situation, Officer Spitzer described her as "lucid" and "aware of everything that was going on." Dkt. No. [132] at 54. "[M]any people would likely find being arrested to be a traumatic event, and any arrest involves a certain degree of duress." United States v. Bushay, 859 F. Supp. 2d 1335, 1354 (N.D. Ga. 2012). But there is no indication that Defendant was in such acute distress that she could not make a "free and deliberate choice" to waive her rights. Moran v.

Burbine, 475 U.S. 412, 421 (1986). There is also no evidence that the several officers who searched and performed a protective sweep of Defendant's residence were near Defendant or otherwise intimidated her when she waived her Miranda rights. Simply put, the combination of several officers' presence during Defendant's arrest, Defendant's emotional distress, and the use of handcuffs to restrain her are not coercive in this case.[3]

Nor did Officer Spitzer's conduct during Defendant's interrogation render Defendant's post-Miranda statements involuntary. Only rarely "a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* . . . ." Dickerson v. United States, 530 U.S. 428, 444 (2000) (quoting Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984)). Defendant argues her interview lasted for "hours" and that she became increasingly panicked when Officer Spitzer told her he would notify the AUSA if she did not cooperate. Dkt. No. [165] at 3–4. Although an "exhaustingly long interrogation" may be coercive, Bushay, 859 F. Supp. 2d at 1373, Defendant was detained at her residence for

---

[3] It is immaterial that Defendant did not sign a Miranda waiver form or that officers did not create an audio recording of Defendant's post-arrest statements. See United States v. Valdez, 880 F.2d 1230, 1233 (11th Cir. 1989) (upholding denial of suppression when officers "failed to take notes or record" a confession); United States v. Dowd, 451 F.3d 1244, 1250–51 (11th Cir. 2006) (stating that a defendant may voluntarily inculpate herself even after refusing to sign a written waiver form); United States v. Diaz, No. 2:06-CR-11-WCO, 2007 WL 9747249, at *7 (N.D. Ga. Jan. 23, 2007) (verbal consent to search was sufficient to defeat suppression).

only about three hours, Dkt. No. [132] at 27. Especially given the familiar and relatively comfortable setting, the Court does not find that a three-hour interrogation overbore Defendant's "will and capacity for self-determination" such that new Miranda warnings were necessary. Shriner, 715 F.2d at 1455 (alterations omitted) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)) (five-hour interrogation while handcuffed in a small room was not coercive).

Moreover, the record shows that Officer Spitzer did not mislead Defendant into incriminating herself. Officer Spitzer did not misinform Defendant about the nature of her Fifth Amendment rights, see Hart v. Att'y Gen of State of Fla., 323 F.3d 884, 895 (11th Cir. 2003), or promise Defendant any result if she spoke with him, United States v. Garcia-Romero, No. 1:12-CR-300-JEC-ECS, 2012 WL 6967270, at *2 (N.D. Ga. Dec. 13, 2012). Merely stating that he would tell the AUSA about any untruthfulness was not deceptive or coercive. See United States v. Hipp, 644 F. App'x 943, 947 (11th Cir. 2016) (affirming denial of a motion to suppress when an agent told the defendant "that it would probably be in [the defendant's] best interest to cooperate, tell the truth, and possibly become a witness for the government"). In sum, the totality of the circumstances indicate that Defendant knowingly, voluntarily, and intelligently waived her Miranda rights and submitted to a non-coercive interrogation. Accordingly, the Court **OVERRULES** Defendant's objections to the Magistrate Judge's recommendation that her Motion to Suppress Statements be denied.

### B.     Motion to Suppress Evidence Seized from 220 Oakwood Circle, Stockbridge, Georgia on January 10, 2019

For similar reasons, the Magistrate Judge correctly recommended that Defendant's Motion to Suppress Evidence Seized From 220 Oakwood Circle, Stockbridge, Georgia on January 10, 2019 be denied. The totality-of-the-circumstances analysis governing consents to search closely resembles the standard applied to a <u>Miranda</u> waiver. <u>See</u> <u>Schneckloth</u>, 412 U.S. at 223–24 & n.6; <u>United States v. Yeary</u>, 740 F.3d 569, 581 (11th Cir. 2014) (explaining that <u>Schneckloth</u> applies to searches of homes). Relevant factors include the

> voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

<u>United States v. Blake</u>, 888 F.2d 795, 798 (11th Cir. 1989) (quoting <u>United States v. Chemaly</u>, 741 F.2d 1346, 1352 (11th Cir. 1984)). "The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." <u>Id.</u>

After reviewing the transcript of the evidentiary hearing, the Magistrate Judge found that Defendant freely and voluntarily consented to a search of her residence. Although Defendant was in custody when she consented, the Magistrate Judge held that officers did not verbally or physically coerce Defendant into consenting. Defendant appeared to understand that she had a

right to refuse to consent and was advised multiple times of that right. The Magistrate Judge paused on the fact that Officer Spitzer told Defendant he would contact an AUSA to apply for a search warrant if she refused to consent to a search. Ultimately, however, the Magistrate Judge concluded that Officer Spitzer made no misrepresentations or baseless threats that might rise to coercion.

Challenging that conclusion, Defendant focuses on three factors: first, that she was in custody when asked to consent; second, Officer Spitzer's statement about applying for a search warrant if she did not consent; and third, her emotional fragility when she consented. It is true that Defendant had been arrested and was handcuffed when Officer Spitzer asked for Defendant's consent. That cuts against a finding of voluntariness. Cf. United States v. Holmes, 270 F. App'x 767, 769 (11th Cir. 2008) (per curiam) (vacating denial of motion to suppress when district court failed to consider the defendant's custodial status, even though other factors indicated voluntary consent). Considering the totality of the circumstances, however, it is clear that Defendant voluntarily allowed officers to search her home. See Blake, 888 F.2d at 799 n.10 ("[A]ll of the factors listed are indicia of coercion to be considered during the weighing of the totality of the circumstances in determining whether consent was indeed voluntary.")

First, the police did not maintain an intimidating or coercive presence in Defendant's home when she was asked to consent. See United States v. Smith, 199 F. App'x 759, 763 (11th Cir. 2006) (per curiam) ("Because 'in any arrest there is present a degree of duress, the question is whether the officers used coercive

tactics or took unlawful advantage of the arrest situation to obtain consent.'"
(alterations omitted) (quoting United States v. Jones, 475 F.2d 723, 730 (5th Cir.
1973))). Officer Spitzer was sitting with Defendant inside Defendant's residence
when he asked for permission to search, and there is no evidence that the several
other officers on Defendant's property were then in close proximity to her. Officer
Spitzer did not draw his weapon, reach for his weapon, or otherwise display any
threat of force toward Defendant. As the Magistrate Judge correctly noted, the
Eleventh Circuit has deemed defendants' consent voluntary in cases where law
enforcement agents acted far more aggressively than Officer Spitzer and his
colleagues did here. See Espinosa-Orlando, 704 F.2d at 513 (defendant
voluntarily consented to a search of his car after officers forced him to the ground
and drew a firearm on him); Garcia, 890 F.2d at 360–61 (defendant, while seated
in his own home, voluntarily consented to the search of the home despite the
nearby presence of 14 agents); United States v. Hidalgo, 7 F.3d 1566, 1571 (11th
Cir. 1993) (after being "arrested by SWAT team members who broke into his
home in the early morning, woke him, and forced him to the ground at gunpoint,"
and then "invok[ing] his right to remain silent," defendant consented to a search
voluntarily); United States v. Aguilar, 519 F. App'x 541, 545–46 (11th Cir. 2013)
(per curiam) (defendant voluntarily consented to search of his house when
officers "had their hands on their weapons"). Officer Spitzer's calm and non-
threatening request for consent clearly weighs in favor of voluntariness. See
United States v. Rodriguez Perez, 798 F. App'x 536, 541 (11th Cir. 2020) (per

curiam) (defendant who had been handcuffed voluntarily consented to search of his car when officers had not drawn their weapons or made threats); United States v. Cusick, 559 F. App'x 790, 793 (11th Cir. 2014) (per curiam) ("[P]olice officers were calm and non-threatening . . . .").

Furthermore, Defendant was very well aware of her right to refuse a search. Officer Spitzer explained that right to Defendant "on numerous occasions . . . ." Dkt. No. [132] at 60. When Defendant asked if she needed to sign a consent-to-search form, Officer Spitzer explained that she did not have to consent to a search at all. He repeated that statement another time before Defendant signed the form. Id. at 61. When he gave Defendant the form, Officer Spitzer told Defendant to make sure she understood what the form said before signing it. Id. at 62. He asked Defendant if she understood and Defendant responded affirmatively.[4] Id. Even after Defendant signed the form, Officer Spitzer reiterated that she could revoke her consent at any time. Id.; see United States v. Morales, 893 F.3d 1360, 1368 (11th Cir. 2018) (officer told defendant she could refuse a search when he obtained verbal consent, and again when he obtained written consent). Only after this final admonition did officers begin to search Defendant's residence.

Defendant makes much of Officer Spitzer's statement that he would seek a warrant if Defendant did not consent to a search. See Dkt. No. [165] at 5. Simply

---

[4] The record reveals little about Defendant's education and intelligence, but there is no evidence that Defendant did not genuinely understand the rights she was waiving or the consequences of waiving them.

put, an officer's statement to a defendant "that, if [s]he d[oes] not consent, officers w[ill] seek a search warrant" does not, by itself, constitute coercion. Aguilar, 519 F. App'x at 545–46; see also United States v. Long, 866 F.2d 402, 405 (11th Cir. 1989) ("Even if the officers stated that they could come back" with a warrant "and 'dig the place up,' such a statement does not amount to coercion."). As the Magistrate Judge noted, Officer Spitzer's statement that he would seek a warrant was neither deceptive nor unfounded, and accorded with his earlier statements that Defendant could refuse to consent. In short, Defendant knew she had a right not to consent to a search, and Officer Spitzer's statement about what he would lawfully do if Defendant exercised that right did not render Defendant's consent involuntary.[5]

Finally, Defendant cooperated with police and indicated she did not believe a search would uncover incriminating evidence. Immediately prior to Officer Spitzer's request for consent, Defendant told Officer Spitzer there "shouldn't be" any methamphetamine in the house. Dkt. No. [132] at 60. Before and after she consented, Defendant told Officer Spitzer she wanted to cooperate and generally

---

[5] United States v. Boukater, 409 F.2d 537 (5th Cir. 1969) is not, as Defendant argues, to the contrary. There, the former Fifth Circuit determined a defendant's consent was voluntary when an agent, like Officer Spitzer, "merely said he would attempt to get a search warrant" if the defendant "withheld consent . . . ." Id. at 538; see Dkt. No. [132] at 61 ("I told her that I would . . . talk to [an AUSA] about applying for a search warrant."). As in Boukater, Officer Spitzer did not tell Defendant "that [s]he might as well consent because a warrant could be quickly obtained if [s]he refused." Boukater, 409 F.2d at 538. Thus, Boukater, especially when considered alongside the more recent cases cited above, does not require a different result.

answered questions cooperatively. See id. at 55, 61, 63; see also United States v. Batson, 749 F. App'x 804, 806 (11th Cir. 2018) (per curiam) (defendant's "unconditional cooperation" pointed toward voluntary consent); United States v. Acosta, 807 F. Supp. 2d 1154, 1180–81 (N.D. Ga. 2011) (consistent cooperation pointed toward voluntary consent). Like the other evidence discussed above, Defendant's cooperation and belief that officers would not find contraband in the house clearly indicate that Defendant voluntarily consented to a search of her home. Defendant's objection that her consent was involuntary is **OVERRULED**.

### C.    Motion to Suppress Evidence Seized from Cell Phone

While in custody in her residence and during the execution of the search, Defendant told Officer Spitzer he could search her phone. Dkt. No. [132] at 69. The Government later obtained a warrant to search the phone and conducted a forensic search. Dkt. No. [115-1].  Prior to the evidentiary hearing, Defendant argued she did not validly consent to Officer Spitzer's search of the phone at the time of her arrest, and said the Government's subsequent forensic search of the phone violated her Fourth and Fifth Amendment rights. The Magistrate Judge recommended that Defendant's motion to suppress the evidence obtained from the forensic search be granted as moot because the Government has said it will not introduce that evidence at trial. Dkt. No. [162] at 45–46. But the Magistrate Judge determined that Defendant voluntarily consented to Officer Spitzer's search of her phone, and held that Officer Spitzer may testify about what he observed on Defendant's phone during that search. Id. at 46–48.

Defendant objects to this latter conclusion. She argues that Officer Spitzer's testimony about what he saw on her phone would amount to an "end-run around" the Fourth Amendment's warrant requirement and would only produce evidence about drug transactions unrelated to this case. Dkt. No. [165] at 8. But Defendant does not contest that she consented to Officer Spitzer's search of her phone, that she unlocked the phone for him, and that she then assisted his search. See Dkt. No. [132] at 69–70. She offers no argument as to why her consent was involuntary, and each of the factors discussed above point toward uncoerced consent. Like the Magistrate Judge, this Court is in no position to determine the relevance of Officer Spitzer's potential testimony without information about what that testimony might be. Accordingly, the Court concludes that Officer Spitzer's observations during a lawful search are not subject to suppression, and Defendant's objection on this point is **OVERRULED**.

### D.    Motion for Return of Property

In her post-hearing brief, Defendant argued her cell phone should be returned because the Government had downloaded the phone's complete contents and because Officer Spitzer testified that the information on the phone is not relevant to the offenses with which Defendant is charged. Dkt. No. [142] at 10. In its initial opposition to Defendant's Motion, filed before the evidentiary hearing, the Government raised three reasons why Defendant's Motion should be denied. First, the Government argued that Defendant's phone, "on information

18

and belief . . . likely contains evidence of the criminal conspiracy that [Defendant] knowingly joined" and with which she is charged. Dkt. No. [112] at 4. Second, the Government said Defendant "used her cell phone to commit and facilitate the drug trafficking conspiracy," leaving the phone subject to criminal forfeiture. Id. at 2. Finally, the Government claimed it had provided Defendant a copy of its forensic image of her cell phone, which allows Defendant to search for exculpatory information. Id. The Magistrate Judge agreed with these arguments. See Dkt. No. [162] at 50–51.

The Court is not prepared to adopt the Magistrate Judge's recommendation without additional briefing from the Government. Officer Spitzer's testimony at the evidentiary hearing directly contradicts the Government's first argument. According to him, Defendant's phone "wasn't the same phone that she used to communicate during the case . . . ." Dkt. No. [132] at 97. Officer Spitzer also agreed with the statement that "there's no evidence on the phone that's related to . . . the conspiracy" and drug distribution charged in the indictment. Id. at 99. As to the Government's second argument, Officer Spitzer saw only one drug-related conversation on the phone, and it was unrelated to the charged conspiracy. It is not even apparent that that conversation resulted in a sale. Id. at 70 ("I think I asked [Defendant] if" the person with whom she was corresponding "ever showed up, and I really don't remember much more about that conversation."). When a defendant has "used property for 'general discussions about unspecified drug transactions,' that property has not facilitated

illegal activity" and thus is not subject to forfeiture. United States v. Approx. 50 Acres of Real Prop. Located at 42450 Highway 441 N. Fort Drum, Okeechobee Cnty., Fla., 920 F.2d 900, 903 (11th Cir. 1991) (alterations omitted) (quoting United States v. One 1980 Bertram 58' Motor Yacht, Known as the M/V Mologa, Serial No. 138M80587-80, VIN: BERRO-138M80B, 876 F.2d 884, 887 (11th Cir. 1989)); see also United States v. One 1979 Porsche Coupe, Vin 9289200514, 709 F.2d 1424, 1426 (11th Cir. 1983) (forfeiture requires "probable cause for the belief that a substantial connection exists between the [item] to be forfeited and the *relevant* criminal activity" (emphasis added)). Thus, it is far from clear, based on Officer Spitzer's testimony, that Defendant's phone is subject to criminal forfeiture. The Government did not address these issues in its post-hearing brief.

Accordingly, the Government is **ORDERED** to respond within **fourteen (14) days** of the entry of this Order to Defendant's objections to the Magistrate Judge's recommendation that Defendant's Motion for Return of Cell Phone [109] be denied. Specifically, the Government should address, in light of Officer Spitzer's testimony, (i) whether it needs to retain Defendant's phone and (ii) whether Defendant's phone may be subject to criminal forfeiture. The Court declines to adopt the Magistrate Judge's recommendation as to Defendant's Motion for Return of Cell Phone [109] at this time, and will revisit the issue after receiving the Government's brief.

## IV.   CONCLUSION

In light of the foregoing, the Court **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation [162] as the opinion of this Court. Specifically, the Court **ADOPTS** the Report and Recommendation as to Defendant's Motion to Suppress Statements [105] and Motion to Suppress Evidence Seized From 220 Oakwood Circle, Stockbridge, Georgia on January 10, 2019 [106]. Those motions are **DENIED**. The Court **ADOPTS** the Report and Recommendation as to Defendant's Motion to Suppress Evidence Seized from Cell Phone [108] and Amended Motion to Suppress Evidence Seized From Cell Phone [115], which are **GRANTED IN PART AS MOOT** and **DENIED IN PART**. The Court also **ADOPTS** the Report and Recommendation as to Defendant's Motion to Bifurcate Count 12 and 21 U.S.C. § 841 Enhancement Evidence [107], which is **GRANTED IN PART** and **DENIED IN PART AS MOOT**.

The Court **DECLINES TO ADOPT** the Report and Recommendation as to Defendant's Motion for Return of Property [109] and does not rule on Defendant's objections at this time. The Government is **ORDERED** to respond to Defendant's objections regarding this Motion within **fourteen (14) days** of the entry of this Order.

The trial in this action is hereby set to begin on **Thursday, September 23, 2021 at 9:30 A.M.** in Courtroom 2107. The pretrial conference will be held on Thursday, September 16, 2021 at 1:00 PM in Courtroom 2107. By noon on Monday,

August 30, 2021, the parties are to file the following: motions *in limine* and proposed *voir dire* questions. By noon on Monday, August 30, 2021, the Government must file a brief summary of the indictment that the parties can rely on for *voir dire*. By noon on Tuesday, September 7, 2021, the parties are to file responses to motions *in limine* and any objections and to those items listed above.

Excludable time is allowed through September 23, 2021, pursuant to 18 U.S.C. § 3161 (h)(7)(A) and (B)(iv), to give counsel for Defendant and the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. The Court finds that the ends of justice served outweigh the best interest of the public and the Defendant in a speedy trial and are consistent with both the best interest of the public and individual justice in this matter.

**IT IS SO ORDERED** this 12th day of May, 2021.

**Leigh Martin May**
**United States District Judge**

22